[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
One defendant, Danaher Tool Group, moves to strike the three counts of the plaintiffs complaint which pertain to it and which allege wrongful death, negligent infliction of emotional distress, and intentional infliction of emotional distress, respectively. The plaintiff, the administrator of the estate of Joseph Dakers, Jr., opposes the motion as does another defendant, NAPCO, Inc.
A motion to strike "admits all the facts well pleaded; it does not admit conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985).
 I
As to the first count, which purports to state a cause of action for wrongful death, the movant argues that the exclusivity provision of the Workers' Compensation Act, General Statutes § 31-284 (a), bars this claim. This count avers; that on May 18, 2000, the decedent was employed by the movant as a machine operator running a black oxide metal finishing machine; that while so employed, the decedent was crushed to death by a transporter, a piece of equipment which conveys parts from one station to another during the finishing process; that certain safety and emergency devices installed on the transporter had been intentionally removed or bypassed by the movant; and that the disengagement of these devices caused the decedent's death when he became trapped while cleaning his finishing machine.
The plaintiff and NAPCO, Inc., contend that the first count of the complaint adequately states a viable cause of action for wrongful death under the exception to the Workers' Compensation Act exclusivity set forth in Suarez v. Dickmont Plastics Corp., I and II, 229 Conn. 99 (1994) and 242 Conn. 255 (1997). The court agrees.
General Statutes § 31-284 (a) exempts employers from liability for CT Page 13273 civil damages "on account of personal injury sustained by an employee arising out of and in the course of his employment." "Arising out of and in the course of his employment" is defined as an accidental injury originating while the employee is engaged "in the line of his duty in the business or affairs of the employer upon the employer's premises . . ." C.G.S. § 31-275 (1). "Personal injury" includes accidental injury. C.G.S. § 31-275 (16) (A).
The Connecticut Workers' Compensation Act is remedial and should be "construed generously to accomplish its purpose." Driscoll v. GeneralNutrition Corp., 252 Conn. 215, 220 (2000). The exclusivity afforded by § 31-284 (a) "manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation." Id. at 221. This trade-off is one of the primary purposes of the Act. Id. at 222. Section 31-284 (a) reflects a compromise of the right to common law remedies for work place injury in exchange for "relatively quick and certain compensation." Id.
Any ambiguities in the Act must be resolved to advance this remedial purpose. Id.
Before the decision in Jett v. Dunlop, 179 Conn. 215 (1979), our Supreme Court had consistently ruled that workers' compensation is the sole remedy available to employees for work-related injury. Id. at 217. In that case, the Supreme Court recognized, in dictum, a possible exception to the exclusivity of workers' compensation where the employer intentionally directs or authorizes another employee to assault the injured party. Id. at 218. An "employer" in this context means not merely an agent or one in a supervisory role but one "of such rank" so as to "be deemed the alter ego" of the employer. Id. at 219.
In Mingachos v. CBS, Inc., 196 Conn. 91 (1985), our Supreme Court was asked to extend the exception mentioned in Jett v. Dunlop, supra, to the situation where the employer intentionally violates safety rules and regulations regarding safe ventilation, fails to correct such violations, and fails to warn employees of the dangers created which conduct results in an explosion which kills an employee. The Supreme Court declined this invitation to expand the crack in the exclusivity shield. Id. at 100. Instead, the Court held that "intentionally," for purposes of avoiding the exclusive remedy of workers' compensation, means to intend the consequent harm and not just the action which precipitated that harm. Id. at 101. This intent is distinguishable from reckless behavior. Id. at 102-103. High forseeability or strong probability are insufficient to establish this intent. Id. Although such intent may be proven circumstantially, what must be established is that the employerknew that the injury was substantially certain to follow the employer's CT Page 13274 deliberate course of action, Id. To hold otherwise would undermine the statutory scheme and purpose of the workers' compensation law and usurp legislative prerogative. Id. at 103-106.
Definitive explication of the intentional injury exception to workers' compensation exclusivity came in Suarez v. Dickmont Plastics Corp., I,229 Conn. 99 (1994). There, our Supreme Court explained that the substantial certainty test differed from a pure intent test in that the employee need only show that the employer believed there was a substantial certainty that the employee would suffer injury from its deliberate conduct rather than a requirement that the employer intended the injury to occur. Id. at 109-111.
The documentary evidence submitted in opposition to a motion for summary judgment in that case raised a genuine dispute concerning the employer's belief that an employee would inevitably amputate his fingers as a result of the employer's demands of the employee. Id. at 111. The evidence proffered showed that the employer refused to allow a machine maintainer to turn off a plastic molding device or to use a vacuum to remove waste plastic from the machine. The evidence showed that the employer insisted that the employee plunge his bare hands into an operating machine. The Supreme Court remanded the case for trial.
That trial resulted in a plaintiffs verdict. The matter was appealed once again, Suarez v. Dickmont Plastics Corp., II, 242 Conn. 255 (1997). Our Supreme Court described its earlier ruling as establishing an exception to the workers' compensation exclusivity provision if the employee can prove "either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiffs injuries substantially certain to occur (substantial certainty standard)." Id.
at 257-258. The Supreme Court reversed and ordered the verdict set aside because the trial evidence was inadequate to support actual intent. Id.
at 280. The Court reiterated that "[slubstantial certainty centers on whether the employer believed the injury was substantially certain to follow the employer's acts or conduct." Id. (emphasis present).
It is not the gravity of the employer's conduct which comes under scrutiny but rather the employer's subjective belief. Suarez v. DickmontPlastics Corp., II, supra at 279. The substantial certainty standard requires a showing that the activity producing the injury to the employee "was intentional or deliberate and the resulting injury, from the standpoint of the employer, was substantially certain to result from the employer's acts or conduct." Ramos v. Branford, 63 Conn. App. 671, 680
(2001). CT Page 13275
Also, "failure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that causes persons injury." Melanson v. West Hartford, 61 Conn. App. 683, 689
(2001). Such delinquencies are not circumstantial evidence of a subjective belief that injury is substantially certain to occur.
Paragraphs 26 through 29 of the first count allege that the movant deliberately removed, bypassed, or modified safety devices installed during manufacture and did so to minimize stoppages in the production line; that the movant required the decedent to operate and clean the finishing machine in the absence of the previously installed safety features; and that, at the time of his death, the movant actually knew that the decedent was substantially certain to suffer serious injury by requiring him to work at his machine in this environment. These allegations, if true, would satisfy the conditions necessary to invoke the Suarez exception to the exclusivity statute.
 II
Turning to the second count, the plaintiff and NAPCO, Inc., claim that this same conduct constitutes negligent infliction of emotional distress. The court disagrees.
In Perodeau v. Hartford, 259 Conn. 79 (2002), our Supreme Court definitively ruled that coworkers incur no liability for negligent infliction of emotional distress for such anguish which arises in a continuing employment situation. In other words, liability for such distress can only be generated if "occurring in the context of termination of employment." Id. at 749. This court perceives no reason why that ruling ought not apply to claims against employers as well as fellow employees. See Parsons v. United Technologies Corp., 243 Conn. 66
(1997). The basis for the Supreme Court's decision in Perodeau v.Hartford, supra, was that "public policies . . . outweigh the interest of persons subject to such behavior in the workplace in being compensated for their emotional injuries." Id. at 758. Clearly, the negligent infliction claim arose from the continued employment context, and, therefore, this count fails to state a cognizable cause of action.
 III
Finally, the movant attacks the third count of the complaint which is based on intentional infliction of emotional distress. This count incorporates by reference most of the allegations of the first count and adds that the movant's intentional conduct was extreme and outrageous and CT Page 13276 was intended to inflict emotional distress on the decedent or the movant knew or should have known that such distress was a likely result of that conduct. These allegations satisfy the elements of intentional infliction of emotional distress. DeLaurentis v. New Haven, 220 Conn. 225, 266
(1991). A trier-of-fact could rationally conclude that deliberately compelling an employee to expose himself to a work environment where serious injury is substantially certain to occur, and where such exposure is not inherently part of the job, such as being a bodyguard, was extreme and outrageous and that the employer knew or should have known emotional distress would ensue.
The motion to strike is granted as to the second count and denied as to the first and third counts.
Sferrazza, J. CT Page 13277